Hanlon & Wilson Company, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs October 6, 1982, to Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Stephen J. Stabler, Reed, Smith, Shaw & McClay,* for petitioner.

*William J. Kennedy,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, November 17, 1982:

Hanlon & Wilson Company (employer), a manufacturer of aircraft exhaust systems in Jeanette, Pennsylvania, seeks review of a decision of the Unemployment Compensation Board of Review that Donald Rugito, a former tool and die maker with the employer discharged for excessive absenteeism, is eligible for unemployment compensation benefits.

A hearing in the matter of the claimant's eligibility was conducted by a referee on March 11, 1981 at which time the claimant, represented by counsel, appeared and testified as did the employer's Personnel Director and General Foreman. The particulars of the claimant's discharge were the subject of markedly conflicting testimony. However, it appears to be undisputed that the claimant's respiratory infirmities including allergies and asthma caused him to be frequently absent from work; that he had been disciplined by means of suspension for absenteeism on at least three occasions prior to his discharge; that his final three absences were on July 8, 1980, July 14, 1980, and November 6, 1980; and that the claimant was discharged on November 14, 1980.

A document admitted into evidence and the subject of testimonial explanation indicates that the employer's rule applicable to absences was as follows:

Criteria for Habitual Absenteeism

A.   An employee who fails to notify the company when absent for five (5) or more consecutive days will be considered as a voluntary quit.

B.   If an employee is absent REPORTED OFF OR NOT REPORTED OFF, nine (9) times within a year, he will be discharged. The exceptions to this rule are:

1.   An employee requests and has been granted a sick leave.

2. Bereavement.
3. Jury Duty.
4. U.S. Reserve Camp.
5. Workmen's Compensation cases.
6. Leave of absence.
7. Doctor's excuse.

Also admitted into evidence is a certificate of the claimant's treating physician, Dr. Norman A. Venzon, M.D. which is as follows:

Patient under my care for severe allergies. He was seen and treated in my office on 7/9/80 and 7/15/80.

Thank you.

Norman Venzon (sig.)

This certificate was presented by the claimant to his foreman on November 17, 1980, the Monday following his discharge.

The primary issue made the subject of the referee's hearing was whether the claimant had violated the work rule set forth above. Although less artfully drafted than it might be, this rule seems clearly to require that workers present a doctor's excuse when they are absent and to declare to be a dischargeable offense nine violations of this requirement.

Only the three absences previously identified were the particular subject of testimony, the claimant apparently conceding on the basis of proof of two earlier suspensions imposed following his third and sixth unexcused absences that his compliance with the work rule must be determined with reference to the two absences in July, 1980 and the absence in November, 1980. As to the absences in July, 1980, the claimant asserted that their cause was his recurring respiratory illness, that he was bedridden throughout each of the days specified, that he sought medical treatment, in each case, after work of the day next following the absences, and that he was told by a superior and be-

lieved that his submission of a physician's certificate on November 17, 1980, would constitute compliance with the rule requiring an excuse.

On the issue of compliance with the rule, the employer's witnesses testified that the certificate submitted on November 17, 1980, was insufficient because it was submitted over four months after the absences and because, by its terms, it excused not the days on which the claimant missed work but, in each instance, the next day following the absence.

At the hearing the claimant further asserted that his discharge was motivated not by his attendance record but by the employer's alleged anti-union animus and the claimant's position as a union official.

On the basis of this evidence, the referee denied benefits, finding as fact:

2. During the course of his employment, the claimant had established a record of excessive absenteeism, and had received warnings and had received three disciplinary suspensions for excessive absenteeism.

3. The last suspension due to excessive absenteeism prior to his last day of work occurred between June 9, 1980 and June 13, 1980.

4. The claimant was absent 27 days in 1979 and 21 days in 1980.

5. Out of the 21 absences in 1980, nine were considered unexcused in accordance with the employer's rules.

6. The employer's rules require employees to report off on a daily basis.

7. During 1980, the claimant had six unreported absences.

8. The claimant was absent on November 6, 1980 without medical verification of illness and was subsequently suspended and discharged for excessive absenteeism.

The Board reversed, a determination predicated on the following factual findings:

The claimant was last employed by Hanlon & Wilson as a tool and die maker at an hourly rate of $6.75 for approximately 20 months and his last day of work was November 14, 1980.

The claimant was discharged due to his attendance record.

The claimant had a leave of absence due to illness.

All of the claimant's absences were properly reported off.

The claimant suffered from a combination of three lung ailments; when they were all affecting him, he was forced to be bedridden.

From these findings it can be concluded that both the referee and the Board rejected the claimant's contention that anti-union animus motivated the employer's discharge decision. On the matter of excessive absenteeism and the violation of the employer's work rules, the referee and the Board appear to have concluded that the employer's rule requires an employee merely to report his absence. The referee and the Board, as evidenced by the findings above quoted, diverged as to whether the claimant met this reporting requirement; the referee deciding that he "had six unreported absences" in 1980 and the Board determining that "the claimant's absences were properly reported off."

Although the testimonial evidence includes references to a requirement of the employer that absent employees notify the employer of their absence as well as conflicting testimony as to whether the claimant complied with this requirement, we must agree with the

employer's contention on the occasion of this appeal that the pivotal issue put to the unemployment compensation authorities for resolution was whether the claimant's final three absences were *unexcused* rather than *unreported*. Since this issue was not resolved by the Board and since it is not within the province of this Court to assess the conflicting evidence related to this issue, we must reverse the order of the Board and remand the record for further proceedings including a finding on whether the claimant had been apprised of the rule requiring a doctor's excuse, whether he complied with that rule, and, if necessary, whether any failure of compliance was excused by, for example, instructions of his supervisor that a doctor's excuse presented on November 17, 1980, would be substantial and sufficient compliance.

Order reversed and record remanded.

### ORDER

AND Now, this 17th day of November, 1982, the order of the Unemployment Compensation Board of Review in the above-captioned matter is reversed and the record is remanded for further proceedings consistent with this opinion.